UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| PHYSICIANS' MEDICAL CENTER, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-cv-00122-SEB-DML |
| | ) |
| CARESOURCE, | ) |
| EMMETT G. COOPER Dr., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| CARESOURCE, | ) |
| | ) |
| Counter Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| PHYSICIANS' MEDICAL CENTER, LLC, | ) |
| | ) |
| Counter Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff Physicians' Medical Center, LLC ("PMC") initiated this declaratory judgment action against Defendants CareSource and Dr. Emmett G. Cooper on June 11, 2019, invoking our diversity jurisdiction. Now before the Court is Defendant CareSource's Motion to Dismiss for Lack of Personal Jurisdiction, [Dkt. 20], pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth herein, we **GRANT** CareSource's Motion to Dismiss.

**Background**

We review here only those facts relevant to the Court's authority to exercise personal jurisdiction over CareSource in this litigation.

Plaintiff PMC is a physician-owned hospital located in New Albany, Indiana. Compl. ¶ 1. Its laboratory performs urinalysis drug screens at the "request of insurers and government payers through their networked physicians." *Id.* Defendant CareSource is an Ohio corporation with its principle place of business in Dayton, Ohio. CareSource's networked physicians send urine samples to PMC for diagnostic testing. *Id.* at ¶ 2. When PMC receives an order and urine sample, it performs the requested screening and provides the diagnostic results to the medical practice or professional that ordered the drug screen. PMC then bills the appropriate insurer for reimbursement. *Id.* ¶12.

Following a review of reimbursement claims submitted by PMC, CareSource determined that some of its networked physicians, specifically, Defendant Dr. Emmett G. Cooper, had, on approximately 6000 occasions, ordered medically unnecessary drug screens to be completed at PMC, the costs of which CareSource reimbursed to PMC. CareSource demanded that PMC refund payments it had received for the drug screens that proved to be medically unnecessary. *Id.* ¶ 3. PMC argues that it had no duty to inquire as to the medical necessity of a drug screening when it received its orders from physicians. Instead, the ordering physician bore all the liability for his or her decision to request the medically unnecessary screening. *Id.* ¶¶ 4, 15, 17. Thus, PMC seeks "(1) a declaratory judgment declaring the rights and other legal relations of the parties and (2) indemnification from Dr. Cooper [.]" *Id.* ¶ 5.

In its Complaint, PMC asserts that "the Court may exercise personal jurisdiction over the Defendants because the Defendants transacted business in this District by doing business with PMC in this District, by sending urine samples to this District for drug screens, and/or paying PMC for performing drug screens in this District." *Id.* ¶ 9. CareSource has now moved to dismiss the claims against it for lack of personal jurisdiction.

## Analysis

### I. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. While "[a] complaint need not include facts alleging personal jurisdiction," once "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (*internal quotation marks and citations omitted*).When a district court rules on a defendant's motion to dismiss based on the submission of written materials, the plaintiff "need only make out a *prima facie* case of personal jurisdiction" and "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.*

A determination of personal jurisdiction involves two steps. First, the federal court must determine whether the "long-arm" statute of the state in which it sits allows jurisdiction and, second, decide whether the exercise of jurisdiction comports with due process. *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A.*, 28 F.3d 572, 580

(7th Cir. 1994). Indiana's jurisdiction statute is Indiana Trial Rule 4.4(A). Trial Rule 4.4(A) provides as follows: "[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Accordingly, we have personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment, which requires the defendant to have "minimum contacts" with the forum state. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004).

Personal jurisdiction may be either specific or general. A court exercises specific jurisdiction over a defendant where the cause of action arises out of or relates to a defendant's purposefully established contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174. General jurisdiction, on the other hand, does not require that the cause of action arise out of contacts with the forum state. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868. General jurisdiction exists where the defendant's contacts with the forum "are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 117 (2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)).

When assessing personal jurisdiction, we must take into account two additional factors: "First . . . each defendant's contacts with the forum State must be assessed individually. Second, the unilateral activity of parties other than the non-resident defendant cannot satisfy the requirement of the defendant's contacts with the forum state." *Purdue*, 338 F.3d at 784. (*quoting Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct.

1482, 79 L.Ed.2d 804 (1984); *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174)) (*internal quotations omitted*).

## II. Discussion

PMC asserts that both general and specific jurisdiction exist over CareSource. We address each theory in turn below.

### A. *General Jurisdiction Cannot Be Exercised Here Over CareSource Because It Is Not "at Home" in Indiana*

The Supreme Court's decision in *Daimler* confirmed that general jurisdiction exists over a corporate defendant in the forum that is its formal place of incorporation or principle place of business. *Daimler*, 571 U.S. at 117; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800(7th Cir. 2014), *as corrected* (May 12, 2014). Here, CareSource is incorporated in and principally operates out of Ohio. Clearly, we are without power to exercise general jurisdiction over CareSource.

PMC nonetheless avers that general jurisdiction does exist based on CareSource's "extensive contacts in Indiana" establishing the "continuous and systematic" affiliations necessary to render CareSource essentially "at home" in Indiana. PMC cites the fact that CareSource has an office in Indianapolis and provides insurance coverage services throughout Indiana. According to PMC, "It is clear from the facts that CareSource runs the same Medicaid and health plan options in Indiana as it does in Ohio and other states . . . Its connections with Indiana are deliberate, purposeful, and widespread." Thus, according to PMC, general jurisdiction over CareSource is established.

CareSource quickly rejoins that the contacts which PMC cites are attributable to CareSource Indiana, Inc., which operates as a separate and independent corporate entity. Apparently anticipating that CareSource might assert this argument, PMC dismissed this distinction as immaterial on the grounds that, in an *amicus brief* to the Supreme Court, in annual reports, and on its webpages, CareSource itself makes "no distinction in [CareSource's] operations and that of CareSource Indiana, Inc."

However, as CareSource has aptly argued, imputing the contacts of one related corporate entity to another in order to establish personal jurisdiction is much less straightforward a task than PMC makes it out to be. Indeed, where two corporations are in fact separate, permitting the activities of the subsidiary to be used as a basis for personal jurisdiction over the parent violates the principle that each defendant's contacts with the forum state must be assessed individually to avoid a violation of due process requirements. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000) (*citing Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n. 13 (1984)("[J]urisdiction over a parent corporation does not automatically establish jurisdiction over a wholly owned subsidiary."). *See also Abelesz v. OTP Bank*, 692 F.3d 638, 658-59 (7th Cir. 2012) ("Imputation . . . requires an unusually high degree of control or that the subsidiary's corporate existence is simply a formality."); *Purdue,* 338 F.3d 773, at n.17; *Cox v. Sherman Capital LLC,* 2015 WL 7300553, at *3 (S.D. Ind. Nov. 18, 2015); *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F. Supp. 1255, 1261 (S.D. Ind. 1997); *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 968 (Ind. 2006).

As our court has previously explained, "institutional independence" is presumed, but "may be overcome by clear evidence," where a parent utilizes its subsidiary in such a way that an agency relationship can be perceived; where the parent has greater control over the subsidiary than normally associated with common ownership; or where the subsidiary is merely an empty shell. *Wesleyan Pension Fund*, 964 F. Supp. at 1261 (*internal citations omitted*) (collecting cases). *See also Cox*, 2015 WL 7300553, at *3 (*citing Purdue*, 338 F.3d at 788 n.17 *and Abelesz*, 692 F.3d 638, 658-59)).

PMC entirely omits any discussion in its briefing of the governing legal principle that that the contacts of one corporate entity are generally not to be imputed to another for the purposes of establishing personal jurisdiction, or the circumstances under which this presumption could be overcome. Instead, PMC skirts past the fact of the corporate separateness of CareSource and CareSource Indiana, Inc., dismissing their separateness altogether. No *prima facie* showing has been made that would allow CareSource Indiana, Inc.'s contacts to be attributed to CareSource consistent with due process due process.[1] Merely parroting the rule that all factual disputes must be resolved in its favor does not save PMC from its failure to invoke the appropriate legal standard. We thus will not

---

[1] Moreover, CareSource has presented evidence indicating that CareSource Indiana, Inc. maintains corporate, operational, contractual, and executive separateness from CareSource. [Dkt. 35, at 7]. CareSource also has rebutted PMC's claims that it does not differentiate between its Ohio and Indiana contacts in its annual reports or on its webpages—both the website and reports, while providing general overviews of CareSource's operations, distinguish between its operations in various states. [Dkt. 29-1, at #139, 145-146]. Interestingly, however, PMC appears to acknowledge the formal separateness of the two entities noting that, while it was a network provider for CareSource Indiana, Inc., it was not a network provider for CareSource, which network status it repeatedly sought with CareSource. [*See generally* Dkt. 29-2, Medley Aff; 29-3, Boyer Aff.] PMC obviously recognized the independence and separateness of these two entities during its prior business dealings with the companies.

impute the contacts of CareSource Indiana, Inc. to CareSource for the purposes of establishing general jurisdiction.

Because CareSource is not incorporated in Indiana and does not maintain its principle place of business in Indiana, general jurisdiction is lacking in this district.[2]

> B. *Specific Jurisdiction is Lacking Because CareSource Has Not Purposefully Availed Itself of the Benefits and Protections of This State*

A court may exercise specific jurisdiction over a defendant when "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (*quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Additionally, specific jurisdiction is not appropriate "merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997). Finally, the plaintiff must demonstrate that

---

[2] Although the *Daimler* Court noted that it was not "foreclos[ing] the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," 571 U.S. at n. 19, PMC does not argue that this is such an exceptional case nor does the evidence before us support that conclusion. In fact, PMC ignores *Daimler*, relying instead on *Goodyear*, which was decided three years before *Daimler* established that "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradig[m] ... bases for general jurisdiction." *Id.* at 117.

"requiring [the defendant] to defend against this lawsuit in the state 'does not offend traditional notions of fair play and substantial justice.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

CareSource asserts that it did not purposefully avail itself of the benefits and protections of Indiana law. According to CareSource, with respect to the allegations pled in PMC's Complaint, only Dr. Cooper has subjected himself to personal jurisdiction in Indiana when he unilaterally decided to solicit PMC's services by sending the urine samples to PMC in Indiana for drug screens and tests. CareSource played no proactive or reactive role in this process. It did not solicit PMC's services, direct Dr. Cooper to utilize PMC's services, or otherwise participate in the selection of PMC (a provider outside of its network) to perform services. CareSource's only participation was as the insurer who paid the bills submitted by PMC, which arose from Dr. Cooper's solicitations. This is an insufficient basis for specific jurisdiction over CareSource in this forum. *Citing Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994). The Court cannot exercise specific jurisdiction over CareSource when CareSource never solicited any business from PMC in Indiana.

PMC maintains that CareSource acted with complete knowledge of PMC's Indiana location, despite PMC's not being a network provider. CareSource approved reimbursement payments to PMC on literally thousands of occasions, notes PMC. Without citing to any supporting authority, however, PMC asserts that specific jurisdiction exists because "[i]n healthcare, it is the payer, such as CareSource, that directs the utilization of healthcare services, determining what can be performed, who can

perform it, and where it can be performed, by controlling reimbursement for healthcare services." According to PMC, CareSource purposefully directed services to PMC by authorizing and continuing to pay for PMC's services provided in Indiana.

We say again: PMC references no controlling principles of law to which it pins this broad claim of specific jurisdiction. As CareSource argues, PMC does not contest that Dr. Cooper was the sole decision maker in determining when to engage PMC services by his purposeful direction of urine samples to PMC for analysis. PMC improperly conflates "authorization" with "payment" in maintaining that CareSource, by paying for PMC's services, somehow unilaterally initiated the business relationship on its own. In response, CareSource directs us to PMC's allegations in the Complaint as well as to the statement of one its affiants asserting that it was the physicians, such as Dr. Cooper, who unilaterally directed business to PMC. These averments in the Complaint make clear,[3] CareSource's networked physicians, not CareSource, exercised sole discretion in directing their business to PMC. Once those services were performed, PMC issued bills to the insurer for reimbursement.

Our analysis identifies only a few contacts attributable to CareSource that bear any relevance to this specific jurisdiction inquiry. We recognize that CareSource's only forum-based activity giving rise to PMC's purported injury was the ongoing task of making reimbursements to PMC of its costs for services to CareSource's networked

---

[3] [*See generally* Compl. ¶¶ 4, 5, 11, 12, 17]. PMC also submits the affidavit of its Managed Care Contracting Consulting, Spencer Boyer, to support its position that CareSource knowingly maintained contacts in Indiana. Even Mr. Boyer recognizes that the urine samples were sent to PMC at the direction of the networked physicians. [Dkt. 28-3, ¶ 5].

10

physicians in Indiana. Query: does this activity constitute "purposeful availment"? Answer: No.

In assessing "purposeful availment" under these circumstances, we look to whether CareSource solicited business from or otherwise targeted PMC. *See Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 879 (7th Cir. 2019). Solicitation or targeting may be found where the defendant has exerted intentional efforts to institute a business relationship with the plaintiff. *See Destiny Health, Inc. v. Connecticut Gen. Life Ins. Co.*, 741 F. Supp. 2d 901, 911 (N.D. Ill. 2010); *Menard, Inc. v. Skyline Pallets Serv., Inc.*, 2008 WL 2783528, at *6 (W.D. Wis. July 15, 2008). Here, no such efforts by CareSource have been identified: CareSource never initiated contact with PMC with respect to its services; it did not direct its physicians to inquire about or utilize PMC's services nor did it attempt to establish any sort of working agreement or contract with PMC.[4] Based on the allegations in PMC's Complaint,[5] Dr. Cooper—without any direction or involvement from CareSource—unilaterally engaged PMC's services.[6]

---

[4] PMC also asserts that CareSource provided PMC with "an application and information to CareSource to be a network provider." However, CareSource did so only following its receipt of several emails from PMC requesting such information. PMC submitted the application, but CareSource never approved it. The correspondence between the parties with respect to this application does not support a finding that CareSource was soliciting a business relationship with PMC. In fact, it indicates the opposite, establishing that CareSource issued the application to PMC only at PMC's request. Jurisdiction over CareSource cannot be based only on such a responsive, reactive contact. *See Ahmed v. Quinn*, 124 F.3d 203 (7th Cir. 1997).

[5] [*See generally* Comp. ¶¶ 4, 5, 11, 12, 17].

[6] PMC does not argue that Dr. Cooper's actions could be imputed to CareSource. Thus, we will not speculate as to that issue. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel").

We return to the topic of CareSource's singular role with regard to the disputed transactions, that is, as reimburser of PMC for its costs. CareSource argues, and PMC does not dispute, that the process of sending payments to a forum-based recipient is insufficient to establish personal jurisdiction over the sender. Without more, CareSource cannot be said to have purposely availed itself of the benefits and protections of Indiana law so as to subject it to personal jurisdiction in this forum. *See RSK Enterprises, LLC v. Comcast Spectacor, L.P.*, 2018 WL 319318, at *4 (N.D. Ill. Jan. 8, 2018); *NexTT Sols., LLC v. XOS Techs., Inc.*, 2014 WL 12892818, at *4 (N.D. Ind. May 14, 2014); *Menard, Inc. v. Skyline Pallets* 2008 WL 2783528, at *6.

To the extent that PMC contends that CareSource's status as an insurer caused it in some sense to "authoriz" Dr. Cooper's transactions in Indiana, we are unpersuaded. There is no evidence to support that characterization and, in any event, CareSource has provided no legal authority to support that theory.[7] There simply is no evidence to show

---

[7] The authorities located by the Court, all of which emanate from outside our Circuit, undercut this proposition, providing further support for dismissal. *See generally Perez v. Pan Am. Life Ins. Co.*, 96 F. 3d 1442 (5th Cir. 1996) (holding no personal jurisdiction existed because neither the broad policy language—which claimed to provide worldwide coverage—nor the mere approval of treatment in Texas constituted "contact" with Texas when the insurer was headquartered in Guatemala and conducted no other business in Texas); *See Wiegering v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 2017 WL 1294907, at *8 (S.D. Fla. Feb. 2, 2017) ("Courts throughout the country have addressed similar jurisdictional issues in the healthcare context and have generally held that an insurer or third-party administrator does not avail itself of the privilege of doing business in a particular state simply because the insured chose a medical provider in that particular forum and the insurer or third-party administrator pre-approved treatment or paid medical bills."); *Bayada Nurses, Inc. v. Blue Cross and Blue Shield of Michigan*, No. 08–1241, 2008 WL 2945388, at * 1 (E.D. Pa. July 30, 2008) (holding that the insurer's payments to a recipient located in Pennsylvania were the result of the beneficiary's selection of the nursing provider, not the insurer's "choice to do business with [the provider] in Pennsylvania," and that telephone calls and payments were insufficient to establish personal jurisdiction).

that Dr. Cooper was acting at the direction of CareSource when he utilized PMC's services or that CareSource was involved in these transactions beyond the issuance of reimbursements following the completion of PMC's drug screening services.

Having determined that CareSource did not purposefully avail itself of the benefits or protections of Indiana law, we need not address the remaining essential elements of specific jurisdiction. Nor do we need to rule on CareSource's alternative request to transfer.

## CONCLUSION

Plaintiff PMC has failed to make a *prima facie* showing that this Court has personal jurisdiction over Defendant CareSource. Accordingly, Defendant CareSource's Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. 20] is **GRANTED**. The claims against CareSource are dismissed without prejudice. CareSource's Counterclaim [Dkt. 41], which was filed subsequent to its Motion to Dismiss and without prejudice to the arguments therein, is also dismissed without prejudice.

IT IS SO ORDERED.

Date: 3/6/2020

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Drew H. Campbell
BRICKER & ECKLER, LLP
dcampbell@bricker.com

Kimberly S. DalSanto
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
kdalsanto@taftlaw.com

C. Dean Furman, Jr.
FURMAN & NILSEN PLLC
dean@lawdean.com

Kara H. Herrnstein
BRICKER & ECKLER, LLP
kherrnstein@bricker.com

Kristopher N. Kazmierczak
KATZ KORIN CUNNINGHAM, P.C.
kkaz@kkclegal.com

D. Sean Nilsen
FURMAN & NILSEN PLLC
snilsen@lawsean.com

Timothy G. Pepper
TAFT STETTINIUS & HOLLISTER LLP
pepper@taftlaw.com

Sally F. Zweig
KATZ KORIN CUNNINGHAM, P.C.
szweig@kkclegal.com